# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

Adela E. Bickford,                                  )
                                                    )    Civil Action No. 5:05-CV-1457-MBS
             Plaintiff,                          )
                                                    )
           vs.                                        )    **ORDER & OPINION**
                                                    )
Denmark Technical College,                     )
                                                    )
             Defendant.                          )
_____)

       Plaintiff Adela E. Bickford filed this action against her former employer, Defendant Denmark

Technical College,[1] on May 19, 2005, alleging that Defendant discriminated against her because of

her national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000(e)-2(a), and her age in violation of the Age Discrimination in Employment Act ("ADEA"),

see 29 U.S.C. § 623.  Complaint, 1-4 (Entry 1).  Plaintiff also raised retaliation claims under both

statutes.  Id. at 4-5.  Defendant moved for summary judgment on April 17, 2006.  Motion for

Summary Judgment (Entry 19).  After having been granted an extension of time to respond, Plaintiff

filed a response in opposition to Defendant's motion for summary judgment on May 30, 2006.

Plaintiff's Memorandum in Opposition (Entry 24).  Defendant filed a reply memorandum on June

6, 2006.  Reply to Plaintiff's Memorandum in Opposition (Entry 25).

       In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred

to United States Magistrate Judge Joseph R. McCrorey for pretrial handling.  On November 29,

2006, the Magistrate Judge filed a Report and Recommendation in which he recommended that

---

[1]    Although Plaintiff initially named Joann Boyd-Scotland as a defendant and
asserted a pendent state law claim against her for intentional infliction of
emotional distress, Complaint  1-7 (Entry 1), the court granted Boyd-Scotland's
motion to dismiss by order filed October 26, 2005 (Entry 14).

Defendant's motion for summary judgment be granted in part and denied in part. Report and Recommendation, 17 (Entry 26). Plaintiff filed no objections to the Report. Defendant filed objections on December 13, 2006. Objections to Report and Recommendation (Entry 27). Plaintiff filed a response to Defendant's objections on December 21, 2006. Reply to Objections (Entry 28).

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are presented in the Magistrate Judge's report. Report and Recommendation, 3-6. In short, Plaintiff is a sixty-three year old Hispanic woman whom Defendant hired in September 1997. Plaintiff's Deposition, 7 (Entry 24-2). Plaintiff's primary role was to provide administrative support to the President of Denmark Technical College, Dr. Joann Boyd-Scotland, at the main campus in Denmark, South Carolina. Plaintiff's Deposition, 8-9 (Entry 24-2). Plaintiff states that, during her employment with Defendant, Boyd-Scotland made derogatory remarks toward Plaintiff concerning her national origin and age;[2] required Plaintiff to work despite Plaintiff's suffering from

---

[2]    See, e.g., Plaintiff's Deposition, 24 (Entry 24-2) (Boyd-Scotland disapproved of a letter Plaintiff had written on her behalf, saying "we don't do things like your people do" in April 2001); id. at 27 (Boyd-Scotland told Plaintiff that she "must need new glasses" or was "getting to old . . . to see where [she] was going" after Plaintiff injured herself in July 2003); id. at 29 (Boyd-Scotland told Plaintiff that

2

back pains, id. at 28; and acted in a physically aggressive manner toward Plaintiff, id. at 22-23, 35. Plaintiff also alleges that, on February 10, 2004, Boyd-Scotland reprimanded her for allegedly giving out confidential information, told Plaintiff to "get out," and instructed Plaintiff to use ten days of her accumulated "comp time" before returning to work. Id. at 35. According to Plaintiff, Boyd-Scotland did not answer Plaintiff's questions about whether she was still employed by Defendant and on two later occasions instructed Plaintiff to not come into work. Id. at 37-38.

On Friday, February 27, 2004, Boyd-Scotland informed Plaintiff via telephone that she had been transferred to the Barnwell campus, which is located in Barnwell, South Carolina. Id. The Barnwell site is used to hold evening classes for students living in the surrounding area. Id. at 39. Aside from Plaintiff, the only other employee working at that site was the maintenance person, who worked during the afternoon. Id. Plaintiff reported to the Barnwell site on February 27; however, due to her being hospitalized with chest pains, she was unable to work from March 1 until March 3. Id. at 41-42.

On March 2, 2004, Plaintiff's attorney wrote Boyd-Scotland a letter stating that, "unless you supercede [sic] the changes you have implemented in her job immediately, we will consider that she has been constructively discharged." March 2, 2004 Letter from J. Lewis Cromer, 1-2 (Entry 19-2). No resolution was reached, and Plaintiff's attorney informed Defendant's attorney that Plaintiff "considers herself to have been constructively discharged." March 8, 2004 Letter from J. Lewis Cromer to Charles Boykin (Entry 19-3). Plaintiff states that she applied for unemployment compensation on March 10, but that Defendant paid her as though she were still employed on March

---

she "must be getting old because [Plaintiff] couldn't remember nothing [sic]" in January 2004).

15, 2004. Plaintiff's Deposition, 43. Boyd-Scotland wrote Plaintiff a letter on March 25, 2004 asking Plaintiff to advise Boyd-Scotland by March 31, 2004 of her intent to change her status of employment with Defendant. Id. Plaintiff did not respond. On April 15, 2004, Boyd-Scotland wrote Plaintiff again, informing her that Defendant considered Plaintiff as having abandoned her employment. Id.

Plaintiff avers that her working conditions at the Denmark campus and the involuntary transfer to the Barnwell campus constitute constructive discharge due to her national origin and age, Complaint, 1-4; that Boyd-Scotland's conduct created a hostile work environment, id. at 3; and that Defendant denied Plaintiff opportunities for advancement and retaliated against her for complaining about the discriminatory manner in which Defendant treated Plaintiff, Response in Opposition, 17-18 (Entry 24). The Magistrate Judge recommended that the court grant summary judgment as to Plaintiff's claims for retaliation and denial of opportunities for advancement, finding that Plaintiff had failed to provide sufficient evidence that she had engaged in any protected activity or that Defendant prevented her from advancing her career.[3] Report and Recommendation, 15, 17. The Magistrate Judge also recommended that the court deny summary judgment with respect to Plaintiff's claims for constructive discharge and hostile work environment, finding that Plaintiff had established a prima facie case for national origin and age discrimination under Title VII and the

---

[3] Plaintiff did not object to the Magistrate Judge's recommendation that summary judgment be granted as to these claims. In the absence of objections to the Report and Recommendation of the Magistrate Judge, this court is not required to give any explanation for adopting the recommendation. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). The court has thoroughly reviewed the Report and concurs in the Magistrate Judge's finding that summary judgment should be granted with respect to the claims for retaliation and denial of opportunities for advancement.

ADEA, respectively.  Id. at 6-14.

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  Nonetheless, in deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law.  McKinney v. Bd. of Trustees of Mayland Community College, 955 F.2d 924, 928 (4th Cir. 1992).

**A.    Prima Facie Case of Discrimination under Title VII and the ADEA**

Plaintiff alleges national origin and age discrimination under Title VII and the ADEA.  The prima facie case of discrimination under both statutes consists of the same analytical framework:

> To demonstrate the prima facie case of [national origin] or race discrimination under the pretext framework, the plaintiff must show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employers' legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.  If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Assuming the

employer meets this burden of production . . . the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons but were a pretext for discrimination.'

Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).  There is no dispute that Plaintiff is a member of a protected class.

### 1.    Adverse Employment Action

Defendant first objects to the Magistrate Judge's finding that Plaintiff satisfactorily alleged an adverse employment action under Title VII and the ADEA.  Objections to Report and Recommendation, 1-5.  Specifically, Defendant argues that Plaintiff's transfer to the Barnwell site does not constitute an adverse employment action because "[Defendant] made no changes to [Plaintiff's] status, pay, benefits, or grade level," id. at 2, and Plaintiff was given "greater autonomy in the performance of her job responsibilities," id. at 3.  Defendant asserts that "there is no evidence in the record that [Plaintiff's] tasks at the College's main campus were any more meaningful, or required any more special skills and education, than did her temporary reassignment to the College's Barnwell campus."  Id. at 4.

"An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment."  James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004).  "A tangible employment action  constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Generally, a lateral transfer does not constitute an adverse employment action within the meaning of Title VII; however, reassignment can form the basis of

a valid Title VII case "if the plaintiff can show that the reassignment had some significant detrimental effect on her." Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999).

Plaintiff has sufficiently alleged an adverse employment action under Title VII and the ADEA. Plaintiff's administrative duties at the Denmark campus included handling mail, maintaining Boyd-Scotland's calendar, composing letters on behalf of Boyd-Scotland, and maintaining Defendant's policy and procedure manual. Plaintiff's Deposition, 11, 12-13, 21, 24. Plaintiff was also responsible for organizing, attending, and taking minutes at weekly executive council meetings and meetings of the Board of Directors. Id. at 10, 14. Conversely, Plaintiff's duties at the Barnwell site consisted only of compiling files for students and monitoring maintenance problems.[4] Id. at 39. Boyd-Scotland also told Plaintiff that she was not allowed to return to the Denmark campus, id. at 39-40; thus, Plaintiff was no longer responsible for many of the extensive administrative duties she performed at the Denmark campus.

The court finds that Plaintiff's transfer to the Barnwell site is an adverse employment action. For purposes of summary judgment, such a significant reduction in job responsibilities, particularly when coupled with the involuntary reassignment, can constitute an adverse action by an employer.[5] See Boone, 178 F.3d at 256-57 ("Absent any decrease in compensation, job title, level of

---

[4]     The only duty described by the new assistant at the Barnwell site, Vivian Grubbs, is opening the site's building. Affidavit of Vivian Grubbs, 1 (Entry 19-8).

[5]     The fact that Plaintiff has not provided evidence of a decrease in pay does not change this result. See Collins v. Illinois, 830 F.2d 692, 702 (7th Cir. 1987) (explaining that "several courts have found an adverse job action, for purposes of discrimination or retaliation, in a lateral transfer even where the transfer did not result in a reduction of pay or benefits. Title VII does not limit adverse job action to strictly monetary considerations. One does not have to be an employment expert to know that an employer can make an employee's job undesirable or even unbearable without money or benefits ever entering into the picture.").

7

responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action."); Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 134 (7th Cir. 1993) (stating that indicia of an adverse employment include a "less distinguished title" and "significantly diminished material responsibilities"); Williams v. City of Fayetteville, No. 99-449, 2002 U.S. Dist. LEXIS 26221, at *59 (D.S.C. May 13, 2002) (finding that plaintiff's involuntary transfer to another department constituted an adverse employment action because it entailed the loss of plaintiff's clothing allowance and investigator incentive and made plaintiff ineligible for certain promotions), *rev'd on other grounds by* 326 F.3d 569 (4th Cir. 2002). As the Magistrate Judge found, when the facts are taken "[i]n the light most favorable to [Plaintiff], her responsibilities were significantly reduced." Report and Recommendation, 11. Accordingly, the Magistrate Judge did not err in finding that Plaintiff's transfer constituted an adverse employment action under Title VII and the ADEA sufficient to survive summary judgment. Defendant's objection is without merit.

### 2.     Legitimate, Non-Discriminatory Reason

Defendant contends that the Magistrate Judge erred in concluding that Defendant failed to prove that its "actions towards [Plaintiff] were at all times based on legitimate, non-discriminatory and non-pre-textual reasons." Objections to Report and Recommendation, 5. Defendant argues that it "temporarily transferred" Plaintiff to the Barnwell site "to better serve that campus' students and to prepare that site for its upcoming accreditation visit." Id. Defendant states that "the Magistrate [Judge] fails to recognize this in his Report." Id.

The court disagrees. To begin with, Defendant mischaracterizes the Report and Recommendation by asserting that the Magistrate Judge did not "recognize" its purported non-

discriminatory reason for transferring Plaintiff.   The Magistrate Judge specifically cites to Defendant's motion for summary judgment and states: "[Defendant] states that it transferred [Plaintiff] to the Barnwell site because of her administrative ability and its need to prepare the Barnwell site for a visit by the Southern Association of Colleges and Schools ('SACS') with respect to accreditation." Report and Recommendation, 11.  The Magistrate Judge did not fail to recognize Defendant's stated reason for Plaintiff's transfer; rather, after acknowledging it, he found that "a jury could reasonably find that [Defendant's] proffered reason is untrue and a pretext for discrimination." Id.

The court concurs in the Magistrate Judge's conclusion.  Once an employer proffers a nondiscriminatory explanation for its decision, the plaintiff must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143 (quoting Texas Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (internal quotations omitted)).  A plaintiff may show pretext by either: (1) persuading the court that a discriminatory reason more likely motivated the employer, or (2) showing that the employer's proffered explanation is unworthy of credence. Id. at 147.  "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Id.

Plaintiff offers various arguments as to why Defendant's purported reason for her transfer is pretextual, including that: (1) although Defendant claims that the purpose of the reassignment was to prepare the Barnwell campus for the SACS visit, her only duties there were to fill out maintenance work orders and file documents; (2) only one person was necessary to fill out the maintenance work

orders, and the maintenance person at the Barnwell site was given that task; (3) Plaintiff was not told of the reassignment until the morning of her transfer; and (4) the events of February 2004 which immediately preceded the transfer "strongly" show that Plaintiff was "continually subjected to harassment and remarks about her age and national origin." Plaintiff's Memorandum in Opposition, 22-23. Based on the evidence before the court, the Magistrate Judge properly concluded that "[a] jury could easily conclude that in this situation, the transfer to the Barnwell site was not because of the alleged upcoming accreditation by SACS." Report and Recommendation, 12. The court finds that there remains a genuine issue of material fact as to whether Defendant's proffered reasons for transferring Plaintiff were pretextual. Defendant's objection is without merit.

**B.      Constructive Discharge**

Next, Defendant argues that the Magistrate Judge "failed to apply [the elements of a constructive discharge claim] to the facts of this case, instead inferring into the record facts that do not exist." Objections to Report and Recommendation, 8. Defendant states that "[w]ithout any evidence of [Plaintiff's] actual experience at her new assignment, there can be no basis for the Magistrate Judge's conclusion that a reasonable jury could find that the Barnwell site was 'intolerable.'" Id. at 10. Again, the court disagrees.

To recover under a theory of constructive discharge, a plaintiff employee must show that her employer created intolerable working conditions in a deliberate effort to force the employee to resign. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995). Deliberateness exists when the actions of the employer were "intended by the employer as an effort to force the employee to quit," Burns v. AFF-McQuay, Inc., 96 F.3d 728 (4th Cir. 1996), and a constructive discharge occurs when a "reasonable person in the employee's position would have felt compelled to resign"

or that she "had no choice but to resign," <u>Blistein v. St. John's College</u>, 74 F.3d 1459, 1468 (4th Cir. 1996) (quoting <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985) (internal citations and quotations omitted)).  If the employee meets this burden, she then must show that the conduct about which she complains was motivated by discrimination based on the employee's race.  <u>Taylor v. Virginia Union Univ.</u>, 193 F.3d 219, 238 (4th Cir. 1999).

Plaintiff has sufficiently alleged intolerable conditions giving rise to a constructive discharge claim.  Plaintiff has asserted that Boyd-Scotland deliberately made Plaintiff's job at the Denmark campus intolerable and that such acts were motivated primarily by Plaintiff's national origin.  <u>See</u>, <u>e.g.</u>, Complaint, 3 ("Plaintiff's constructive discharge was preceded by . . . Boyd-Scotland personally insulting the plaintiff at every opportunity, often in the presence of other employees and strangers, calling her 'stupid,' 'incompetent,' 'blind,' and 'incapable of following instructions."); <u>id.</u> ("Boyd-Scotland . . . complained of plaintiff's work saying 'we don't do things like your people do' which can only be referring to plaintiff's national origin in a derogatory manner."); Plaintiff's Memorandum in Opposition, 11-13 (various allegations of incidents in which Boyd-Scotland made derogatory comments about Plaintiff's age and national origin, the "purpose [of which] was to force the plaintiff to quit her job").

Moreover, the Magistrate Judge correctly found that a jury could reasonably find that the conditions of Plaintiff's new assignment at the Barnwell campus to be intolerable.  Report and Recommendation, 13.  Not only has Plaintiff averred that her duties at the Barnwell campus were greatly diminished from those at the Denmark campus, but she has also repeatedly alleged that the Barnwell campus was isolated, unsafe, and infested with mice.  <u>See</u>, <u>e.g.</u>, Plaintiff's Memorandum in Opposition, 14-15; Reply to Objections, 4.  At this stage, Plaintiff has alleged facts sufficient for

11

a reasonable jury to find constructive discharge due to national origin and/or discrimination.

**C.      Hostile Work Environment**

Finally, Defendant asserts that Plaintiff failed to produce any facts supporting a claim of hostile work environment. Objection to Report and Recommendation, 10. Defendant does not raise any specific objection to the Magistrate Judge's findings; rather, Defendant simply states that "contrary to the Magistrate Judge's conclusion otherwise, there is no evidence that [Plaintiff] was subjected to a hostile work environment due to her race and/or age." Id. Even if the court construed this statement as an objection to the Report, at most, it would constitute the type of general and conclusory objection that does not warrant the court's response. See Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982) (when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed finding and recommendations, the court need not conduct a de novo review).

## III. CONCLUSION

The court adopts the Report and Recommendation of the Magistrate Judge and incorporates it by reference. For the reasons stated herein and in the Report and Recommendation, Defendant's motion for summary judgment is **granted** in part and **denied** in part.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　     /s/ Margaret B. Seymour
　　　　　　　　　　　　　　　　　　Margaret B. Seymour
　　　　　　　　　　　　　　　　　　United States District Judge

Columbia, South Carolina
March 27, 2007

12